IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **DEBRA WILLINGHAM and BENNIE LEE WILLINGHAM**, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| **PHH MORTGAGE CORPORATION d/b/a PHH MORTGAGE SERVICES** | **JURY TRIAL DEMAND** |
| Defendant. | |

Plaintiffs DEBRA WILLINGHAM and BENNIE LEE WILLINGHAM, individually and on behalf of all others similarly situated, by and through the undersigned counsel, bring this action against Defendant PHH MORTGAGE SERVICES, and state as follows for their Class Action Complaint:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiffs Debra and Bennie Lee Willingham (collectively, the "Willinghams") are each a natural person residing in Broward County, Florida.

2. Defendant PHH Mortgage Servicing, Inc ("Defendant" or "PHH") is a New Jersey corporation with its principal place of business located in Mt. Laurel, New Jersey.

3. PHH does business in the state of Florida and is licensed to do business in the state of Florida as a foreign corporation.

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as this action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA")

5. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear the state law claims brought under the Florida Consumer Collections Practices Act (FCCPA), Fla. Stat. § 559.72, *et seq.*

6. Venue lies in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## STATEMENT OF FACTS

### *The Willinghams' and the FDCPA Class Members' Loans*

7. PHH is the servicer of Willinghams' Loan and the FDCPA Class (defined *infra*) members' notes, and mortgages on residential real property, used for personal, family, or household purposes, that secure those notes (collectively, the "loans").

8. When PHH acquired the servicing rights to Willinghams' and the FDCPA Class members' loans, PHH asserted that the Willinghams and Class members were in default of their obligations thereunder.

9. The Willinghams and the FDCPA Class members are each a "consumer" as they are each a natural person who is obligated or allegedly obligated to pay their loans. 15 U.S.C. § 1692a(3).

10. The Willinghams' and the FDCPA Class members' loans are each a "debt" as each is an obligation or alleged obligation of the Willinghams or Class members to pay money arising out of a transaction primarily for personal, family, or household purposes—the financing of their homes. 15 U.S.C. § 1692a(5).

11. PHH is a "debt collector" as defined by 15 U.S.C. § 1692a(6), as it regularly engages, or attempts to engage, in the collection of "debts", and it regularly collects debts owed or

due, or asserted to be owed or due, to another for which the primary purpose is for personal, family, or household use, including the Willinghams' and the FDCPA Class members' loans.

### *Plaintiffs' and the FCCPA Class Members' Loans*

12. PHH is the servicer of Plaintiffs' Loans and the FCCPA Class (defined *infra*) members' loans.

13. Plaintiffs and the FCCPA Class members are each are "consumers" as defined by Florida Statute §559.55(8) as each is a natural person obligated or allegedly obligated to pay any debt, specifically, their respective loans.

14. Plaintiffs' and the FCCPA Class members' loans are each a "debt" as defined by Florida Statute §559.55(6) as each is an obligation or alleged obligation of Plaintiffs or the FCCPA Class members to pay money arising out of a transaction primarily for personal, family, or household purposes—the financing of their homes.

### *PHH's Improper Denials of Eligibility for Short Sales and Misrepresentations*

15. Plaintiffs and each member of the FDCPA Class and the FCCPA Class (collectively the "Classes") fell delinquent on their mortgages.

16. Plaintiffs and each member of the Classes subsequently submitted applications for loss mitigation and requested approval from PHH for a short sale transaction to mitigate their losses.

17. As part of this short sale approval process, Plaintiffs and each member of the Classes submitted a purchase offer to PHH.

18. Plaintiffs and each member of the Classes submitted a purchase offer for an arm's-length transaction to PHH.

19. Despite Plaintiffs' and each member of the Classes's purchase offer representing an arm's length transaction, PHH sent correspondence in response to the same stating that the loss mitigation applications and/or purchase offers were denied because the "loan has undergone foreclosure and the property is currently being marketed for sale" or the loan has undergone foreclosure and/or the property is Real Estate Owned (the "Denials").

20. PHH's reasons for the Denials implied that the properties titles had passed to the Lenders and were now Real Estate Owned ("REO").

21. PHH's denial of Plaintiffs' and each member of the Classes' loss mitigation applications and/or purchase offers were improper as each such denial was based upon an obvious falsehood, that the properties were REOs and being marketed for sale.

22. PHH's improper, incorrect, and misleading denials of Plaintiffs' and each member of the Classes' purchase offers related to their attempted loss mitigation applications and/or short sales evidence a lack of reasonable skill, care, and diligence, as well as a failure to act in good faith and with fair dealing with respect to each of the loans.

23. PHH, in sending correspondence stating or otherwise communicating to Plaintiffs and members of the Classes that the loss mitigation applications and/or purchase offers related to their attempted short sales were denied due to a plainly wrongful determination that title no longer belonged to Plaintiffs and the members of the Classes, engaged in conduct constituting dishonest dealings and misrepresentations. Additionally, by continuing the foreclosure process, PHH engaged in prohibited dual tracking of Plaintiffs' and Class members loans.

24. PHH's conduct has caused Plaintiffs and members of the Classes to suffer significant pecuniary and non-pecuniary damages.

25. Plaintiffs and members of the Classes were each denied for a short sale per the pending purchase offers at the market rate of the time of their review and lost the opportunity for said short sale at that time.

26. Plaintiffs and members of the Classes will have to incur costs, expenses, and lost time in obtaining and submitting further short sale materials, including obtaining, if able, further purchase offers that otherwise would not have been and should not have been necessary.

27. Plaintiffs and members of the Classes, if unable to subsequently qualify for a subsequent loan modification: Will remain at risk of foreclosure and of the negative impacts accompanying such, including, but not limited to an exacerbation of damage to and a delay in the rehabilitation of the credit harm they have suffered as a result of their delinquencies on the loans; are likely to incur costs and legal fees to represent their interests in foreclosure actions initiated in court; and, are likely to be exposed to the potential for deficiency judgments which would have been otherwise avoided through the attempted short sales.

28. The Willinghams and certain Class members—*i.e.*, members of the NOE Subclass (defined below)—sent NOEs to PHH concerning the PHH's erroneous conduct in misrepresenting that the purchase offers related to their attempted short sales.

29. Plaintiffs and members of the Classes have further been caused to suffer severe emotional distress driven by PHH's actions and by the tangible fear that PHH's failure to appropriately handle the short sale processes related to their loans, would result in aforementioned uncertainties and damages described, *supra*.

**FACTS RELEVANT TO THE WILLINGHAMS**

30. On July 7, 2005, the Willinghams entered a mortgage loan with non-party Mortgage Electronic Registration Systems, Inc., as nominee for First NLC Financial Services, LLC, which

was secured by a mortgage on the Willinghams' principal place of residence located at 3731 NW 4th Ct. Lauderhill, FL 33311 (the "Willinghams Property").

31. PHH currently services the Willinghams' loan on behalf of the assignee of the Willinghams' loan, pursuant to a contractual agreement between PHH and the assignee.

32. At the time PHH obtained servicing rights for the Willinghams' loan, PHH alleged the Willinghams were in default of their obligations thereunder.

33. In or about February 1, 2023, the Willinghams, through their authorized agent, sent, and PHH received, a complete application containing all necessary information for PHH to consider the Willinghams' eligibility for loss mitigation, including a short sale of the Willinghams Property, as well as a purchase offer from a third-party buyer having no relation to the Willinghams.

34. On or about February 8, 2023, PHH sent a correspondence to the Willinghams' that their purchase offer/short sale was being denied as the property was now foreclosed and an REO. PHH incorrectly based this on the fact that it believed the Willinghams Property had gone to foreclosure auction on November 1, 2022. However, prior to the auction, the Willinghams filed for bankruptcy and the sale was canceled. Both the Broward County Foreclosure Inventory Auction site and the and the Foreclosure case docket, reflect the sale cancellation on November 1, 2022 due to suggestion of bankruptcy. Copies of the online case docket and foreclosure auction inventory are attached hereto as **composite Exhibit 1**.

35. Thereafter, on or about February 16, 2023, the Willinghams sent a correspondence to PHH at the address PHH designated for borrowers to send communications pursuant to 12 C.F.R. §§ 1024.35(c) and 1024.36(b) (the "Designated Address"), captioned "Dual Tracking Notice of Error" (the "NOE") alleging that PHH committed errors and misrepresentations in

processing the Willinghams' short sale application and making the patently false claim the Willingham Property was an REO and that its denial was impeding their loss mitigation rights pursuant to law. *See*, a copy of the NOE, with tracking information evidence delivery of the NOE at the Designated Address, attached as, **Exhibit 2**.

36. PHH received the NOE at the Designated Address on or about February 21, 2023. *See*, Exhibit 2.

37. PHH sent further correspondence to the Willinghams dated February 23, 2023, consisting of another denial denying their request for loss mitigation or "mortgage assistance." PHH claimed this denial of all possible loss mitigation options, was based on the fact that "the loan has undergone foreclosure and the property is currently being marketed for sale". *See*, a copy of the February 23, 2023 denial letter, attached as **Exhibit 3**.

38. PHH did not provide a response to the Willinghams' NOE as required by RESPA and Regulation X.

39. On February 24, 2023 the Willinghams filed a complaint with the CFPB regarding PHH's acts of dual tracking and misidentifying their property as an REO thereby interfering with their loss mitigation rights.

40. PHH sent the Willinghams a correspondence on March 10, 2023 responding to their CFPB complaint. In the letter, PHH provided a substantive response, claiming that the foreclosure sale was proper and occurred prior to the notice of bankruptcy. PHH further refuted any allegations made and denied any errors. PHH reiterated that "loss mitigation options are not available on this account and this property is now REO." Nowhere in this correspondence did PHH address the fact that both the court docket and the County foreclosure sale records reflect the supposed sale as canceled. Nor did PHH address the fact that as of the date of this correspondence, title has not

passed from the Willinghams. Accordingly, PHH was in gross error continuing to claim the Willinghams Property was an REO and in violation of law denying their right to loss mitigation, even post foreclosure judgment. *See* a copy of the March 10, 2023 correspondence, attached as **Exhibit 4**.

41. At no point did the Willinghams directly receive any further response to the NOE beyond the March 10, 2023 letter from PHH.

42. Due to PHH's conduct, the Willinghams were not approved for the short sale and still has no knowledge as to the real reason the short sale was denied so as to be able to correct any such deficiencies.

43. A foreclosure sale of the Willinghams' Property is not currently scheduled. However, PHH as engaged in *ex parte* motion practice in the foreclosure proceeding to attempt to have title transferred in violation of the Willinghams' rights.

44. PHH's improper actions caused the Willinghams to suffer from actual and proximate damages including, but not limited to:

 (a) Legal fees, costs, and expenses to submit the NOE in an attempt to have PHH mitigate the harm caused to the Willinghams to which they did not receive a proper response and as the problem continues to persist;

 (b) The lost opportunity to enter into the short sale and resolve the default and its related legal issues in an expedient manner;

 (c) Legal fees, costs, and expenses related to preparing and submitting further loss mitigation materials and in expectation of and in defense of judicial foreclosure proceedings and a foreclosure sale of the Willinghams Property;

 (d) Significant delay in the loss mitigation process and rehabilitation of their credit;

(e) Accrued interest, fees and charges imposed on the Willinghams' Loan including default servicing related fees since the issuance of the Denial for which the Willinghams are personally obligated or which otherwise negatively impacts any equity in the Willinghams Property to which they are entitled; and,

(f) Severe emotional distress driven by PHH's failure to properly handle their review of the Willinghams' eligibility for a short sale and continued misrepresentations regarding the same and by justified fear that such blatant indifference to improper actions on would result in the sale of the Willinghams Property at a foreclosure sale and the negative impacts, including credit damages and the potential of a deficiency judgment, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

## **CLASS ACTION ALLEGATIONS**

45. **FDCPA Class Definition**: Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of a class of similarly situated individuals and entities (the "FDCPA Class"), defined as follows:

> All loan borrowers in the United States, during the applicable statute of limitations period, (1) who have mortgage loans secured by residential real property obtained for personal, family, or household use, (2) whose mortgage loans are serviced by PHH, (3) whose mortgage loans were in default at the time PHH obtained servicing rights to the same, (4) whose loans are not owned in whole or in part by PHH, (5) who sought loss mitigation relief in the form of a short sale from PHH, and (6) who were denied eligibility for loss mitigation and/or the short sale on the erroneous claim the property was an REO.

> Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in

this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

46. **FCCPA Class:** Plaintiffs also bring this action pursuant to Fed. R. Civ. P. 23 on behalf of a class of similarly situated individuals and entities (the "FCCPA Class"), defined as follows:

> All loan borrowers in the State of Florida during the applicable statute of limitations period, (1) who have mortgage loans secured by residential real property located within the State of Florida obtained for personal, family, or household use, (2) whose mortgage loans are serviced by PHH, (3) who sought loss mitigation relief in the form of a short sale from PHH, and (4) who were denied eligibility for loss mitigation and/or the short sale on the erroneous claim the property was an REO.

> Excluded from the FCCPA Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the FCCPA Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

47. **NOE Subclass Definition**: Plaintiffs also brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a subclass of similarly situated individuals and entities (the "NOE Subclass"), defined as follows:

> All loan borrowers in the United States, during the applicable statute of limitations period, (1) who have mortgage loans secured by residential real property obtained for personal, family, or household use, (2) whose mortgage loans are serviced by PHH, (3) whose mortgage loans were in default at the time PHH obtained servicing rights to the same, (4) whose loans are not owned in whole or in part by PHH, (5) who sought loss mitigation relief in the form of a short sale from PHH, (6) who were denied eligibility for loss mitigation and/or the short sale on the erroneous claim the property was an REO, (7) who sent a notice of error to PHH regarding PHH's denial, and (8) did not receive an adequate response to the same.

> Excluded from the NOE Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely

request for exclusion from the NOE Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

48.     **Numerosity and Ascertainability**: Upon information and belief, the FDCPA Class, the FCCPA Class, and the NOE Subclass (collectively, the "Classes") are each comprised of more than forty (40) members, such that the Classes are so numerous that joinder of all members is impractical. Moreover, loss mitigation is at the center of this matter. Due to the COVID-19 pandemic which affected nearly every family in the country, if not the world, it is expected that a higher percentage of borrowers than would be typical are loss mitigation relief for their loans, including in the form of short sales. The exact number of members in the Classes is presently unknown and can only be ascertained through discovery. Class members can easily be identified through Defendant's records or by other means.

49.     **Commonality and Predominance:** There are questions of law and fact common to the proposed Classes that predominate over any individual questions. Simply put, PHH improperly denied Plaintiff and members of the Classes for short sales based on patently false claims and Plaintiffs and members of the Classes were harmed as a result. There are questions of law and fact common to the proposed Classes that predominate over any individual questions, including:

(a) Whether PHH improperly claimed that the properties were classified as REOs;

(b) Whether PHH made misrepresentation as to the nature of the properties at issue in the short sale Denials;

(c) Whether PHH made misrepresentations as the basis of the denials for loss mitigation;

(d) Whether PHH properly responded to the notices of error sent on behalf of the NOE Subclass;

(e) Whether Plaintiffs and Class members suffered actual damages, and the measure and amount of those damages; and,

(f) Whether Plaintiffs and Class members are entitled to recover statutory damages.

50. **Typicality**: Plaintiffs' claims are typical of the claims of the Classes. On information and belief, Plaintiffs' and members of the Classes' loans contain substantially similar language or contain substantially similar language to such documents. Further, on information and belief, Plaintiffs and members of the Classes received nearly identical Denials as such letters appear to have been generated from a form template. As such, Plaintiffs and members of the Classes were subjected to and affected by a uniform course of conduct; specifically, PHH's improper denial of their loans for eligibility for short sales.

51. **Adequacy**: Plaintiffs will adequately represent the interests of the Classes and do not have adverse interests to the Classes. Plaintiffs' counsel has extensive experience litigating consumer class actions.

52. **Superiority**: A class action is the superior method for the quick and efficient adjudication of this controversy. If individual members of the Classes prosecuted separate actions, it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct.

### COUNT I
**Violation of the FDCPA, 15 U.S.C. §§ 1692e and 1692f**
**(On behalf of Plaintiffs and the FDCPA Class)**

53. Plaintiffs repeat and reallege paragraphs 1 through 44 with the same force and effect as though fully set forth herein.

54. The FDCPA makes it illegal for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. 15 U.S.C. § 1692e(10).

55. PHH's conduct is a violation of the FDCPA if it would be deceptive to the least-sophisticated consumer. *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (stating "[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.")

56. The FDCPA is a strict liability statute and accordingly PHH's conduct need not have been intentional, PHH's conduct violated the FDCPA regardless of its intentions. *See LeBlanc* at 1190.

57. PHH made false representations to the Willinghams and each member of the FDCPA Class in the collection of a debt by issuing the Denials containing the patently false claim that their properties were REOs.

58. PHH, through its agents, representatives, and/or employees acting within the scope of their authority, violated 15 U.S.C. §1692e(10) in issuing the Denials.

59. PHH's actions have caused the Willinghams and members of the FDCPA Class to suffer actual damages, further described, *supra*.

60. As a result of PHH's actions, PHH is liable to Plaintiffs and Class members for actual damages, statutory damages, costs, and attorneys' fees. 15 U.S.C. § 1692k.

**COUNT TWO:**
**Violations of Fla. Stat. §559.72(9)**
**(On behalf of Plaintiffs and the FCCPA Class)**

61. Plaintiffs repeat and reallege paragraphs 1 through 44 with the same force and effect as though fully set forth herein.

62. At all times relevant to this action, PHH is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

63. PHH, in, *inter alia*, issuing the Denials, violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when PHH knew that the debt was not legitimate, or asserting the existence of some other legal right when PHH knew that right did not exist.

64. PHH is claiming, attempting and threatening to enforce a debt against Plaintiff by sending the Denials, despite knowing that Plaintiffs' and FCCPA Class members' properties were not REOs. *See,* Exhibits 1 through 4.

65. "Any ***person*** who fails to comply with any provision of s. 559.72 is liable for actual damages ***and for additional statutory damages as the court may allow***, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the PHH's liability for any additional statutory damages, the court shall consider the nature of the PHH's noncompliance with s.559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. 559.77(2) (emphasis added).

66. PHH's actions have caused Plaintiffs and FCCPA Class members to suffer actual damages, further described, *supra*.

67. As a result of PHH's actions, PHH is liable to Plaintiffs and FCCPA Class members for actual damages, statutory damages, costs, and attorneys' fees. Fla. Stat. 559.77(2).

**COUNT THREE:**
**Violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k)**
**(On behalf of Plaintiffs and the NOE Subclass)**

68. Plaintiffs repeat and reallege paragraphs 1 through 44 with the same force and effect as though fully set forth herein.

69. "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

70. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

71. A servicer must respond to a notice of error by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i); *see also* 12 U.S.C. § 2605(e)(2)(B).

72. A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

   (B) Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

   (C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

73. "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

74. A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

75. Plaintiffs and members of the NOE Subclass sent notices of error (the "NOEs) to PHH at the Designated Address alleging that PHH committed errors in claiming their properties were REOs and they were not entitled to loss mitigation.

76. PHH failed to adequately respond to the NOEs in violation of 12 C.F.R. § 1024.35(e) as PHH failed to admit and correct the alleged errors or otherwise failed to perform a reasonable investigation into said errors, if PHH responded at all.

77. PHH's failures to perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOEs constitute violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and has caused Plaintiffs and NOE Subclass members to suffer actual damages as detailed, *supra*.

78. PHH's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiffs' and NOE Subclass members' rights and PHH's obligations under RESPA and Regulation X.

79. PHH's conduct as pleaded, *supra*, shows a conscious disregard for the Willinghams' and NOE Subclass Members' rights and PHH's obligations under RESPA and Regulation X.

80. As a result of PHH's actions, PHH is liable to Plaintiffs and NOE Subclass members for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Debra and Bennie Lee Willingham, individually and on behalf of all others similarly situated, prays for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the FDCPA Class and the NOE Subclass, each as defined, *supra*;

B. Designating Plaintiffs as representatives of the FDCPA Class, the FCCPA Class, and the NOE Subclass, and their undersigned counsel as Class Counsel;

C. Entering judgment in favor of Plaintiffs, the FDCPA Class, the FCCPA Class, and the NOE Subclass and against Defendant;

D. Awarding Plaintiffs, the FDCPA Class, the FCCPA Class, and the NOE Subclass their actual damages;

E. Awarding Plaintiffs and the FDCPA Class their statutory damages as allowed under the FDCPA;

F.  Awarding Plaintiffs and the FCCPA Class their statutory damages as allowed under the FDCPA;

G.  Awarding Plaintiffs and the NOE Subclass their statutory damages as allowed under RESPA;

H.  Awarding Plaintiffs, the FDCPA Class, the FCCPA Class, and the NOE Subclass attorneys' fees and costs, including interest thereon, as allowed or required by law; and,

I.  Granting all such further and other relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues.

Dated May 5, 2023

Respectfully submitted,

/s/ Scott D. Hirsch
Scott D. Hirsch
**SCOTT HIRSCH LAW GROUP PLLC**
Fla. Bar No. 50833
6810 N. State Road 7
Coconut Creek, FL 33073
Tel: (561) 569-7062
scott@scotthirschlawgroup.com

*Counsel for Debra and Bennie Lee Willingham, and the Putative Classes*